Eastern District of Kentucky
FILED
OCT 19 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 2005-80

**MARLENE SAMPLES**                                         **PLAINTIFF**

VS.                     <u>**OPINION AND ORDER**</u>

**JO ANNE BARNHART**
**COMMISSIONER OF SOCIAL SECURITY**          **DEFENDANT**

This matter is before the court on the motion for summary judgment of the claimant (Doc. 10) and the Commissioner's cross-motion. (Doc. 12).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298, No. 00-5710(6th Cir. 2001) (<u>citing Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial

1

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. <u>Heston v. Commissioner of Social Security</u>, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." <u>Id.</u> at 534(<u>citing</u> <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. <u>Id</u>. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities." <u>Id</u>. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of her age, education or work experience. <u>Id</u>. (<u>citing</u> 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. <u>Id</u>. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work

2

which exists in the national economy. Id. (Citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was forty-nine years of age with a high school equivalent education (GED). She had not had any past employment for the previous fifteen years. The claimant is five feet, one inch in height and weighs 272 pounds. Claimant suffers from several medical problems including, carpal tunnel syndrome, shoulder pain in both shoulders, back pain, arthritic pain in her elbows, hips, knees, ankles and lower back, depression, hypertension, diabetes, obesity, urinary incontinence, left heel and ankle pain, swelling and numbness in her legs and she uses a walker. The claimant has had surgery to repair a torn rotator cuff in her right shoulder and has had carpal tunnel release on both wrists.

The ALJ determined at step one, that plaintiff had not been engaged in substantial gainful activity since the onset of disability. At step 2, the ALJ determined that the plaintiff "has severe impairments consisting of bilateral shoulder dysfunction, status-post surgery on the right, carpal tunnel syndrome, status-post left carpal tunnel release, morbid obesity, and degenerative disc disease of the lumbar spine." The ALJ found that although claimant has impairments that are considered "severe" she does not have an impairment or combination thereof

3

that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found the plaintiff had no past relevant work. At step 5, the ALJ determined that the claimant had residual functional capacity to perform a limited range of light work. The vocational expert testified that there were light positions available in significant numbers in the economy that would accommodate the claimant's limitations. Thus, the ALJ determined the claimant was not disabled.

The claimant makes numerous arguments, but her emphasis is on her argument that the ALJ erred in not giving appropriate weight to the medical opinions of her treating physicians. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

The claimant asserts that the ALJ did not give sufficient weight to Dr. Melton and Dr. Bever's assessments. The ALJ, however, gave sufficient reasons to support his finding that these doctors' assessments were not entitled to great weight. The ALJ stated:

> On December 4, 2000, Dr. Melton completed a letter in which he opined that the claimant is 'unable to work." (See Exhibit 18F, p. 2) The treating physician listed the claimant's diagnoses at that time as 'hypertension, recurrent thrombophlebitis, chronic low back pain and degenerative disc disease, overactive bladder, recurrent

4

osteoarthritis, anxiety and depression. Dr. Melton completed an assessment of the claimant's ability to perform various work-related activities on October 22, 2001. (Exhibit 17F) Dr. Melton opined that the claimant could not perform any lifting with her left arm and that she could only lift three to four pounds occasionally with her right arm. (Id. at 2) Dr. Melton reported that the claimant could only stand for a total of one hour during an eight-hour day and for no more that thirty minutes at a time. The physician estimated that the claimant could not sit for more than a total of one hour during an eight-hour workday. (Id. at 3) Dr. Melton opined that the claimant could never perform any postural activities. He also indicated her abilities to reach, handle, feel, push and/or pull were also affected. He described substantial environmental limitations as well. Dr. Melton further opined that the claimant was "unable to work' and that she 'will never be able to do any gainful employment again.' (Id. at 4) Unfortunately, Dr. Melton did not support his opinions with citations to specific clinical evidence. Asked for medial findings to support his opinions, Dr. Melton referred to such things as 'severe arthritis,' 'severe pain [and] stiffness,' 'severe musculoskeletal pain [and] weakness,' 'muscle spasm,' 'back, arm [and] shoulder pain, hypertension, allergies, fluid retention.'

On May 14, 2001, shortly after performing arthroscopic surgery on the claimant's right shoulder, Dr. Bever offered his opinion that the claimant was not 'able to work at the current time.' (See Exhibit 23F, p. 3) Dr. Bever noted that rehabilitation for shoulder injuries can be slow and he reported that 'many patients will improve for up to a year after the surgery." He further opined that the claimant would 'probably permanently be restricted from heavy lifting activities with this arm and will be restricted from the use of the arm above shoulder level on a permanent basis." Dr. Bever completed an assessment of the claimant's ability to perform various work-related activities on March 21, 2002. He opined that he claimant could lift and/or carry no more than two or three pounds frequently or more than five pounds occasionally due to history of surgery for right shoulder rotator cuff tear and the existence of a left rotator cuff tear. (See Exhibit 19F, p. 6) Dr. Bever also opined that the claimant should avoid overhead use of her arms. Dr. Bever did not cite specific clinical findings in support of his limitations, and Dr. Bever did not note any similar restrictions in any of his office notes.

The court finds that the ALJ articulated clear reasons why she discredited the treating physicians' assessments: she did not

5

find the treating physicians' assessments and considerable restrictions to be consistent or supported by the record. The court finds that the ALJ stated acceptable reasons for finding Dr. Melton and Dr. Bever's assessments less than fully credible.

Nevertheless, the court finds that the ALJ did err in not obtaining an updated medical opinion after she received the February 17, 2003 MRI.

At step four, the ALJ Stated:

> In arriving at the residual functional capacity assessment below, the Administrative Law Judge places significant weight in the medical opinions of Dr. Lorber. Dr. Lorber, an orthopedic doctor, demonstrated that he had carefully reviewed the record through his detailed testimony at the hearing, with specific reference to exhibit/page number to support his opinion. Dr. Lorber's medical opinion is consistent with the medical opinions of Dr. Ross, a consultative state agency physician (See Exhibit 15F), and both sets of opinions appear consistent with the clinical evidence in the record. The MRI scan of the claimant's lumbar spine was not submitted until after the hearing in this case. (See Exhibit 30) The MRI documents significant degenerative changes which is why the claimant's back impairment is found to be severe. However, treating physicians have not documented significant reduction in range of motion in the low back, decreased motor strength in the lower extremities, or significant neurological abnormalities. The Administrative Law Judge is convinced that the residual functional capacity assessment below adequately accounts for reasonable limitations associated with the claimant's low back condition.

The court finds troubling the fact that the ALJ stated she gave significant weight to the opinion of Dr. Lorber, yet she did not seek Dr. Lorber's opinion as to whether the February 17, 2003 MRI, demonstrating significant degenerative changes, affected his medical testimony. Dr. Lorber testified at the hearing that there was no evidence to support a diagnosis of chronic low back

6

pain with degenerative disc disease. (AR p. 469). He also testified that there was no evidence that claimant needed a walker to ambulate effectively. (AR p. 474). The February 17, 2003 MRI of claimant's lumbar spine, submitted after the hearing but before the ALJ's decision, revealed signs of degenerative changes and canal stenosis at the L4-L5 level and signs of a moderate left paracentral disc protrusion at the L5-S1 level with some thecal sac and S1 nerve root compression. (AR p. 403). The court finds that the February 2003 MRI may contain the clinical evidence Dr. Lorber was looking for to validate Dr. Melton's diagnosis of degenerative disc disease and, in combination with her hip problems and obesity, claimant's need for a walker. The MRI is also important evidence for Dr. Lorber to consider in determining whether the claimant meets or equals a listing. The court finds that the ALJ relied on the testimony of a medical consultant who did not have access to all important clinical studies and, therefore, the ALJ's decision is not supported by substantial evidence.

The court further finds that the ALJ's decision does not articulate how the ALJ evaluated claimant's obesity with respect to her other impairments. The ALJ listed obesity as being one of claimant's "severe" impairments, but the ALJ did not specifically perform any further analysis of how claimant's obesity affected the other steps of the sequential evaluation.

Social Security Ruling 02-01p makes it clear that obesity is considered a severe impairment which, alone or in combination

7

with other impairments, can result in disability. SSR 02-01p. The Ruling states that a body mass index (BMI) of greater than or equal to 40 is considered "extreme." Here, claimant is five feet, one inch tall and weighs in excess of 270 pounds. The record demonstrates that her BMI has consistently been above 50. Upon remand, the ALJ should perform a specific analysis as to how claimant's obesity, combined with her other impairments, affects the functional limitations of her other impairments. The court is specifically concerned with whether claimant's obesity and degenerative disc disease combined meet or equal Listing 1.04. The ALJ shall also specifically discuss how claimant's obesity was considered in the ALJ's determination of her RFC.

For the foregoing reasons, the court finds that the ALJ's decision is not based on substantial evidence. Once a court determines that substantial evidence does not support the Commissioner's decision, it can reverse the decision and award benefits only if all essential factual issues have been resolved and the record establishes the claimant is entitled to benefits. <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171, 176 (6th Cir. 1994). Where, as here, the factual issues have not been resolved, the court shall remand the case for further consideration. <u>Id</u>.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 10) be, and it hereby is, **granted in part** as to plaintiff's request for a reversal of the Commissioner's

decision, and **denied in part** as to his request for a court ordered award of benefits, and that the cross-motion for summary judgment of the defendant (Doc. 12) be, and it hereby is, **denied**.

**IT IS FURTHER ORDERED** that this action be, and it is, hereby **remanded** to the Commissioner for further proceedings.

This 19th day of October, 2005.

_____
**WILLIAM O. BERTELSMAN, JUDGE**